T.C. Summary Opinion 2015-14

UNITED STATES TAX COURT

MANOLITO T. LEGASPI, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19895-13S.                         Filed February 24, 2015.

Manolito T. Legaspi, pro se.

Paulmikell A. Fabian, for respondent.

SUMMARY OPINION

GUY, Special Trial Judge:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue

(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $3,146 in petitioner's Federal income tax for 2010 (year in issue). Petitioner filed a timely petition for redetermination with the Court pursuant to section 6213(a). At the time the petition was filed, petitioner resided in California.

After concessions,[2] the issues remaining for decision are whether petitioner is entitled to (1) a deduction (in excess of the $4,778 respondent allowed in the notice of deficiency) for vehicle expenses claimed on Schedule C, Profit or Loss From Business, (2) a noncash charitable contribution deduction of $4,230 claimed on Schedule A, Itemized Deductions, (3) a dependency exemption deduction for his minor son, and (4) an earned income credit (EIC).[3]

---

[1](...continued)
Code, as amended and in effect for 2010, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[2]Petitioner concedes that he is not entitled to an itemized deduction for real estate taxes in excess of the $3,895 deduction that respondent allowed in the notice of deficiency.

[3]To the extent not discussed herein, other issues are computational and flow from our decision in this case.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.

## I. Petitioner's Web Site

Petitioner earned a degree in computer science from De La Salle University in the Philippines. In 2007 or 2008, after working as a computer programmer for about 10 years, petitioner created a Web site, Filamnation.com, devoted to publishing information about events of interest to Filipino Americans.

Petitioner testified that Filamnation.com averaged about 1,000 to 1,500 visitors each day during 2010 and that he was able to generate income by selling advertisement space on the Web site to various businesses. He further testified that he entered into agreements with event promoters to include promotional information about special events on Filamnation.com in exchange for permission to set up a booth to promote his Web site at those events.

When attending an event petitioner typically conducted a raffle as a means to collect personal email addresses from participants in exchange for a chance to win Filamnation.com T-shirts. Petitioner used the email addresses he collected this way to disseminate Filamnation.com's newsletter to as many as 80,000 email addresses up to three times per week.

Petitioner testified that he traveled by car throughout California and neighboring States to attend events and promote Filamnation.com. He further testified that he usually spent the night with friends on longer trips.

Petitioner produced a mileage log for 2010 that identified each event he attended, the dates he traveled, the cities he traveled to, and the number of miles he drove. According to the mileage log, petitioner attended more than 150 events and drove 32,450 miles in 2010.

## II. Petitioner's Charitable Contributions

Goodwill issued a receipt to petitioner, dated June 13, 2010, acknowledging that he donated six bags of clothing, one bag of shoes/accessories, and six pieces of furniture. The Goodwill receipt does not include a detailed description of the items petitioner donated or a statement whether he received anything of value in exchange for the items. At trial petitioner produced photographs of seven pieces of furniture he claimed to have donated--a three-piece bedroom set, an armoire, a console table, a CD rack, and a mirror. Each photograph included petitioner's handwritten notes listing the year the item was purchased, the original purchase price for the item, and the item's fair market value--an amount equal to one-third of the listed purchase price. Petitioner did not obtain an independent appraisal of

the noncash items that he donated to Goodwill, but rather he assigned a value to each item himself.

III. Petitioner's Divorce

Petitioner testified that he and his now former spouse, Maria S. Reyes, were divorced in 2009 but that he continued to reside with her and their two children until November 2010. At that point petitioner moved out, and the couple's two children continued to reside with Ms. Reyes.

IV. Petitioner's Tax Return for 2010

Petitioner timely filed a Form 1040, U.S. Individual Income Tax Return, for 2010 claiming head of household filing status and dependency exemption deductions for himself, his mother, and his minor son ML.[4] He reported adjusted gross income of $25,397, comprising net business income of $400 and unemployment compensation of $24,997.

Petitioner claimed various itemized deductions on Schedule A, including gifts to charity (other than by cash or check) of $4,230. On Form 8283, Noncash Charitable Contributions, petitioner reported that on June 2, 2010, he donated items to Goodwill valued at $4,230 and that he had acquired the items on

---

[4]It is the Court's policy to refer to minor children only by their initials. See Rule 27(a)(3).

February 1, 2008, with a cost or adjusted basis of $8,250. Petitioner did not attach to his tax return an appraisal of the noncash items that he donated to Goodwill.

Petitioner reported on Schedule C that he conducted a "marketing" business, Filamnation.com, that generated gross receipts of $29,585. He reported that he drove 32,450 miles for business purposes, and, applying the applicable standard mileage rate of 50 cents per mile, he claimed a deduction for vehicle expenses of $16,225.[5]

## V. Ms. Reyes' Tax Return for 2010

Ms. Reyes also filed a Federal income tax return for 2010. She reported wage income of $38,880 and, like petitioner, claimed a dependency exemption deduction for ML. She also claimed an EIC of $282.

## VI. Developments During and After Trial

The Court permitted petitioner to belatedly assert for the first time at trial that he is entitled to an EIC for 2010. Placing the parties on equal footing, the Court likewise permitted respondent to assert for the first time at trial that petitioner was not entitled to a dependency exemption deduction for ML.

---

[5]The Commissioner generally updates the optional standard mileage rates annually. See sec. 1.274-5(j)(2), Income Tax Regs. The standard mileage rate of 50 cents per mile for 2010 is set forth in Rev. Proc. 2009-54, sec. 2.01, 2009-51 I.R.B. 930, 930.

At the conclusion of the trial the Court left the record open for a brief period to permit petitioner to produce additional documentation substantiating his vehicle expenses. The parties were unable, however, to agree to a supplemental stipulation of facts, and the record subsequently was closed.

Discussion

The Commissioner's determination of a taxpayer's liability in a notice of deficiency normally is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[6]

Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). A taxpayer must substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir.

---

[6]Although petitioner has not asserted that the burden of proof as to any relevant factual issue should shift to respondent under sec. 7491(a), respondent bears the burden of proving that petitioner is not entitled to a dependency exemption deduction for ML. See Rule 142(a) (respondent shall bear the burden of proof in respect of any new matter or increases in the deficiency).

1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred. Sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90.

When a taxpayer establishes that he or she paid or incurred a deductible expense but fails to establish the amount of the deduction, the Court normally may estimate the amount allowable as a deduction. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). There must be sufficient evidence in the record, however, to permit the Court to conclude that a deductible expense was paid or incurred in at least the amount allowed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Under section 162(a), a deduction is allowed for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. A deduction normally is not allowed, however, for personal, living, or family expenses. Sec. 262(a). Whether an expenditure satisfies the requirements for deductibility under section 162 generally is a question of fact. See Commissioner v. Heininger, 320 U.S. 467, 475 (1943).

Section 274(d) prescribes more stringent substantiation requirements to be met before a taxpayer may deduct certain categories of expenses, including expenses related to the use of listed property as defined in section 280F(d)(4)(A). See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969). As relevant here, the term "listed property" includes passenger automobiles. Sec. 280F(d)(4)(A)(i). To satisfy the requirements of section 274(d), a taxpayer generally must maintain adequate records or produce sufficient evidence corroborating his or her own statement, which, in combination, are sufficient to establish the amount, date and time, and business purpose for each expenditure or business use of listed property. Sec. 1.274-5T(b)(6), (c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016-46017 (Nov. 6, 1985).

Section 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985), provides in relevant part that "adequate records" generally consist of an account book, a diary, a log, a statement of expense, trip sheets, or a similar record made at or near the time of the expenditure or use, along with supporting documentary evidence. Section 1.274-5(j)(2), Income Tax Regs., provides in relevant part that a taxpayer who elects to use the optional standard mileage rate method to compute vehicle expenses must nevertheless meet the strict substantiation requirements of section 274(d). Moreover, the Court may not use

the rule established in <u>Cohan v. Commissioner</u>, 39 F.2d at 543-544, to estimate expenses covered by section 274(d).  <u>Sanford v. Commissioner</u>, 50 T.C. at 827; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

## I.  Vehicle Expenses

Petitioner elected to apply the standard mileage rate and claimed a deduction for vehicle expenses of $16,225.  Respondent maintains that petitioner has not adequately substantiated vehicle expenses greater than $4,778.[7]

Petitioner testified that he traveled extensively in 2010 to attend events where he promoted Filamnation.com.  The record includes a mileage log that purports to show the number of miles that petitioner drove for business purposes.  Although we have no doubt that petitioner traveled to promote his Web site, he nevertheless failed to produce any supporting documentation to substantiate the information in his mileage log.  In particular, he offered no evidence such as gasoline receipts, credit card statements, emails from event promoters, or testimony or statements from friends to corroborate the information in his mileage log.  On this record, we conclude that petitioner has failed to adequately

---

[7]Respondent determined that petitioner drove 9,555 miles for business purposes in 2010.  Multiplying 9,555 miles by the standard mileage rate of 50 cents per mile, respondent allowed petitioner vehicle expenses of $4,778.

substantiate a deduction for vehicle expenses greater than the amount respondent allowed.

## II. Charitable Contributions

Charitable contributions are deductible only if verified in accordance with regulations prescribed by the Secretary.  Sec. 170(a)(1); see Van Dusen v. Commissioner, 136 T.C. 515, 530 (2011).  Section 170(f)(8)(A) provides that the taxpayer must obtain a contemporaneous written acknowledgment from the donee for any claimed charitable contribution deduction of $250 or more.  Section 170(f)(8)(B) provides in relevant part that the contemporaneous written acknowledgment must include the amount of cash and a description of any property other than cash contributed, whether the donee organization provided any goods or services in consideration, in whole or in part, for any cash or property contributed, and, if so, a description and good-faith estimate of the value of any goods or services provided by the donee.  Sec. 1.170A-13(b), (f), Income Tax Regs.  Section 170(f)(8)(C) provides that a written acknowledgment is contemporaneous when the taxpayer obtains it on or before the earlier of (1) the date the taxpayer files a return for the year of contribution; or (2) the due date, including extensions, for filing that return.

In addition to the written acknowledgment requirement, section 170(f)(11) and related regulations establish more detailed requirements for substantiation of contributions of property other than money. For noncash contributions of $500 or less, the taxpayer must substantiate the contribution with a receipt from the donee indicating the donee's name, the date and location of the contribution, and "[a] description of the property in detail reasonably sufficient under the circumstances." Sec. 1.170A-13(b)(1), Income Tax Regs. For noncash contributions in excess of $500, the taxpayer normally must also maintain written records showing the manner in which the item was acquired, the approximate date of acquisition, and the cost or adjusted basis of the property. Id. para. (b)(3); see Lattin v. Commissioner, T.C. Memo. 1995-233.[8]

Goodwill issued a receipt to petitioner acknowledging that he donated clothing, shoes/accessories, and furniture in June 2010. The receipt does not include a statement whether Goodwill provided any goods or services in consideration, in whole or in part, for the property that petitioner contributed, and the receipt does not include a detailed description of the donated items. Under the

---

[8]If information regarding the acquisition date or cost basis of the property is not available and the taxpayer attaches a statement to his return setting forth reasonable cause for not being able to provide such information, the taxpayer's charitable contribution deduction shall not be disallowed on that account. Sec. 1.170A-13(b)(3)(ii), Income Tax Regs.

circumstances, petitioner has failed to meet the substantiation requirements for contributions of $250 or more prescribed in section 170(f)(8), and, therefore, we sustain respondent's determination that he is not entitled to a deduction for the noncash charitable contributions claimed on his return.

## III. Dependency Exemption Deduction and EIC

As previously discussed, the Court permitted petitioner to assert for the first time at trial that he was entitled to an EIC. The Court likewise permitted respondent to present evidence challenging the dependency exemption deduction that petitioner claimed for ML.

### A. Dependency Exemption Deduction

An individual is allowed a deduction for an exemption for "each individual who is a dependent (as defined in section 152) of the taxpayer for the taxable year." Sec. 151(c). Section 152(a) defines the term "dependent" to include "a qualifying child". Generally, a "qualifying child" must (1) bear a specified relationship to the taxpayer (e.g., be a child of the taxpayer), (2) have the same principal place of abode as the taxpayer for more than one-half of such taxable year, (3) meet certain age requirements, (4) not have provided over one-half of such individual's own support for the taxable year at issue, and (5) not have filed a joint return for that year. Sec. 152(c)(1).

Section 152(c)(4) provides special rules when two or more taxpayers can claim the same qualifying child as a dependent. As relevant here, section 152(c)(4)(B)(i) provides that, if the parents claiming any qualified child do not file a joint return together, such child shall be treated as the qualifying child of the parent with whom the child resided for the longest period during the taxable year.

Petitioner moved out of what had been the marital home in November 2010, and we have found that ML continued to reside with Ms. Reyes thereafter. Under the circumstances, and inasmuch as petitioner did not file a joint tax return with Ms. Reyes for 2010, it follows that ML was the qualifying child of Ms. Reyes in accordance with the provisions of section 152(c)(4)(B)(i).

Petitioner likewise cannot claim ML as his qualifying child under the special rules that apply in the case of divorced parents. See sec. 152(e); Espinoza v. Commissioner, T.C. Memo. 2011-108. Pursuant to section 152(e), when certain criteria are met, a child may be treated as a qualifying child of the noncustodial parent (here, petitioner) rather than of the custodial parent (Ms. Reyes).[9] Sec. 152(e)(1); sec. 1.152-4, Income Tax Regs. In accordance with section 152(e)(1)

---

[9]Consistent with petitioner's testimony that he moved out of the marital home in November 2010, Ms. Reyes was ML's custodial parent. See sec. 152(e)(4)(A) ("The term 'custodial parent' means the parent having custody for the greater portion of the calendar year.").

and (2), petitioner could treat ML as his qualifying child only if Ms. Reyes had signed a written declaration that she would not claim ML as a dependent and if petitioner attached the written declaration to his tax return for 2010. Petitioner did not attach the requisite written declaration to his tax return, and, in fact, the record reflects that Ms. Reyes claimed ML as her dependent for the taxable year 2010. Considering all the circumstances, we conclude that petitioner is not entitled to a dependency exemption deduction for ML for 2010.

B. Earned Income Credit

Petitioner asserted at trial that he is entitled to an EIC. Respondent contends that petitioner is not entitled to an EIC because he did not have a qualifying child as required by law for the year in issue.

Section 32(a)(1) allows an eligible individual an EIC. Section 32(c)(1)(A)(i) defines an "eligible individual" as an individual who has a qualifying child for the taxable year. The term "qualifying child" is defined in section 32(c)(3)(A) to mean a qualifying child of the taxpayer (as defined in section 152(c), determined without regard to paragraph (1)(D) thereof and section 152(e)). Consistent with the preceding discussion, ML was not petitioner's

qualifying child as that term is defined in section 152(c) for 2010. It therefore

follows that petitioner is not eligible for an EIC.[10]

To reflect the foregoing,

Decision will be entered

under Rule 155.

--------

[10]Petitioner did not assert that he would be eligible for an EIC without a qualifying child under the provisions of sec. 32(c)(1)(A)(ii). For the sake of completeness, we note that petitioner reported adjusted gross income of $25,397 for 2010, including $24,997 of unemployment compensation. See Rev. Proc. 2009-50, sec. 3.06, 2009-45 I.R.B. 617, 622 (for taxable year 2010, taxpayers with a filing status of head of household are subject to the complete phaseout of the EIC if adjusted gross income (or, if greater, earned income) exceeds $18,470).